United States District Court
Southern District of Texas
**ENTERED**
March 31, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| EARLEEN HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:20-CV-00004 |
| | § | |
| PETSMART, INC., | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

A "whodunit" is a mystery or detective story.  This case is a whodunit—of sorts.  Plaintiff Earleen Hill seeks damages arising out of a slip and fall at PetSmart's Victoria, Texas location.  PetSmart filed a Motion for Summary Judgment arguing that Hill's single claim for premises liability fails under Texas law.  The Court concludes that there is a genuine issue of material fact as to whether PetSmart had actual or constructive knowledge of the substance—here, dog urine—that caused Hill's slip and fall.  There are conflicting accounts as to *whose* dog urinated on PetSmart's floor (and when).  For this reason and the reasons that follow, the Court **DENIES** the Motion for Summary Judgment.

**I.    BACKGROUND**

On January 6, 2020, Hill filed this lawsuit in the 24th Judicial District Court of Victoria County, Texas.  (Dkt. No. 1-4).  PetSmart removed the case to this Court on the

basis of diversity jurisdiction.[1]  (Dkt. No. 1).  In Hill's live pleading, she alleges that she visited PetSmart's Victoria location on or around January 15, 2018.[2]  (Dkt. No. 1-2 at ¶ 10).  While "walking inside the store near the front entrance," Hill stepped in what she believed to be animal urine, feces, or both.  (*Id.*).  As a result, she fell and "was transported by ambulance to the emergency room where it was determined that immediate hip surgery was needed and subsequently performed."  (*Id.* at ¶¶ 11–12).  Hill asserts a single claim under Texas law for premises liability.  (*Id.* at ¶¶ 13–19).  She seeks more than $200,000 in actual damages, court costs, and interest.  (*Id.* at ¶ 2).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2253, 91 L.Ed.2d

---

[1]    Neither party contests diversity jurisdiction under 28 U.S.C. § 1332.  PetSmart is a Delaware corporation and has its principal place of business in Arizona.  (Dkt. No. 1 at ¶ 4); (Dkt. No. 1-2 at ¶ 4).  Hill is a Texas citizen.  (Dkt. No. 1 at ¶ 4); (Dkt. No. 1-2 at ¶ 3).  The amount in controversy exceeds $75,000.  (Dkt. No. 1 at ¶¶ 2, 5); (Dkt. No. 1-2 at ¶ 2).

[2]    Hill has not amended her Original Petition that was filed in state court.  Nor has she requested to amend.  The Original Petition is the live pleading.

265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

If the movant meets this burden, the nonmovant must come forward with specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (citation omitted).  "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim."  *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (cleaned up).  "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citation omitted).

The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075).  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib.*,

*Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).  For evidence to be admitted, the materials "need

only be *capable* of being 'presented in a form that would be admissible in evidence.'"  *LSR*

*Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed.

R. Civ. P. 56(c)(2)) (emphasis in original).

In reviewing a motion for summary judgment, the district court must view the

evidence in the light most favorable to the nonmovant.  *Coleman v. Hous. Indep. Sch. Dist.*,

113 F.3d 528, 533 (5th Cir. 1997).  This means that factual controversies are to be resolved

in the nonmovant's favor, "but only when . . . both parties have submitted evidence of

contradictory facts." *Little*, 37 F.3d at 1075.

## III.    OBJECTIONS TO EVIDENCE

As a preliminary matter, PetSmart raises two hearsay objections under Rules 801

and 802 of the Federal Rules of Evidence.  First, PetSmart objects to Hill's deposition

testimony that, after Hill fell, a customer said, "it's a shame that they don't clean up –

urine on the floor."  (Dkt. No. 16 at 1).  PetSmart also objects to Hill's statement to

PetSmart's store leader Kelly Johnson—immediately after Hill fell—that another

customer told Hill that it was "that customer's dog that urinated." (*Id.*).  Hill, in response,

argues that both statements fall under an exception to the rule against hearsay because

they are present sense impressions under Rule 803(1).  (Dkt. No. 18 at 4–6).  The Court

sustains PetSmart's first objection but overrules the second.

Under the Federal Rules of Evidence, "Hearsay is not admissible unless any of the

following provides otherwise: [1] a federal statute; [2] these rules; or [3] other rules

prescribed by the Supreme Court."  Fed. R. Evid. 802.  Hearsay is "a statement that: (1) the

declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to provide the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Fed. R. Evid. 801(a).

A present sense impression is not excluded by the rule against hearsay.  Fed. R. Evid. 803(1).  A present sense impression is defined as a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."  *Id.*  The focus of the inquiry is "the timeliness of the statement."  *First State Bank of Denton v. Maryland Cas. Co.*, 918 F.2d 38, 42 (5th Cir. 1990).  "The classic 'present sense impression' is the recounting of an event that is occurring before the declarant's eyes, as the declarant is speaking[.]"  *Navarette v. California*, 572 U.S. 393, 407, 134 S.Ct. 1683, 1694, 188 L.Ed.2d 680 (2014) (Scalia, J., dissenting).  "The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event."  *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 280 (5th Cir. 1991).

### A.    "IT'S A SHAME THAT THEY DON'T CLEAN UP URINE ON THE FLOOR"

PetSmart first objects to the statement "it's a shame that they don't clean up – urine on the floor."  (Dkt. No. 16 at 1).  During Hill's deposition, she stated that a woman standing behind her made that statement.  (Dkt. No. 15-2 at 24).  Hill also claimed during her deposition that this statement was made "[a]t the same time" that Johnson arrived at the scene of the accident.   (*Id.*).   During Johnson's deposition, she stated that she

"probably" arrived at the scene of the fall "less than a minute and a half" after Hill fell. (Dkt. No. 15-5 at 9).

Hill advances two theories for why the statement is a present sense impression. Hill's first theory is that the woman's statement "was describing the event or condition made the subject of [her] fall"—urine—and that the statement was made "immediately after the incident" because it was less than one-and-a-half minutes later. (Dkt. No. 18 at 5). Hill's second theory is that the woman's "statement was even made while perceiving the event or condition" that resulted in Hill's fall. (*Id.*). In other words, the event was still ongoing at the time that the customer observed it.

The Fifth Circuit, citing the Advisory Committee Notes, has noted that "in many, if not most instances, Precise contemporaneity is impossible, and hence a Slight lapse is allowable" under Rule 803(1). *United States v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979) (capitalization in original). But the Fifth Circuit has held that a "slight lapse" in time does *not* include an out-of-court statement made at least fifteen minutes after the incident it describes. *Id.* The Fifth Circuit has not provided further bright-line guidance. Nonetheless, courts in this district have explained that "[p]recise contemporaneity is not required." *Canatxx Gas Storage Ltd. v. Silverhawk Cap. Partners, LLC*, No. 4:06-CV-1330, 2008 WL 1999234, at *13 (S.D. Tex. May 8, 2008); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6814 (4th ed.) ("Each case depends on its facts, and courts occasionally permit a 'slight lapse' of a few minutes up to half an hour between event and observation."). At first blush, then, the woman's statement appears to satisfy Rule 803(1) because it was made less than a minute and a half after Hill fell. *Compare*

(Dkt. No. 15-2 at 24) *with* (Dkt. No. 15-5 at 9).  Because the statement was made "very soon thereafter," *United States v. Polidore*, 690 F.3d 705, 720 (5th Cir. 2012), it appears to be admissible under Rule 803(1).  *Cf. Veals v. Edison Chouest Offshore, LLC*, No. 06-3776, 2009 WL 10710266, at *4 (E.D. La. Mar. 6, 2009).

Even  so, the Court cannot consider the statement.  As Justice Scalia observed, "cases addressing an unidentified declarant's present sense impression indicate hesitancy in upholding the statement alone as sufficient proof of the reported event." *Navarette*, 572 U.S. at 408, 134 S.Ct. at 1694 (Scalia, J., dissenting) (internal quotations omitted); *see also* Fed. R. Evid. 803 advisory committee notes.  It is for this reason that at least one district court in the Fifth Circuit has declined to consider out-of-court statements that would otherwise constitute present sense impressions because the declarant was unknown.  In particular, the Southern District of Mississippi was unprepared "to ignore the requirement of trustworthiness underlying the hearsay exceptions of the Federal Rules of Evidence" when the person who uttered the present sense impression was unidentified.  *Gerhart v. Rankin County*, No. 3:11-CV-586-HTW-LRA, 2018 WL 4689126, at *3 (S.D. Miss. Sept. 29, 2018).  The hearsay objection was therefore sustained.  *Id.*  This makes sense.  Without knowing who the witness is, there is simply "too great a risk of inaccuracy or untrustworthiness to provide the circumstantial guarantees of trustworthiness contemplated by the hearsay exceptions." *See Rock*, 922 F.2d at 280 (citing Fed. R. Evid. 803 advisory committee notes).

Here, Hill fails to identify the customer who made the statement.  Exhibit 5, which Hill cites, does not identify the customer witness.  (Dkt. No. 15-6).  Nor do the briefs.

*Compare* (Dkt. No. 15 at 5) *with* (Dkt. No. 16 at 1).   Thus, the Court sustains PetSmart's objection.   The Court will not consider the purported statement "it's a shame that they don't clean up – urine on the floor" from the unidentified customer.

**B.   "THAT CUSTOMER'S DOG THAT URINATED"**

PetSmart next objects to the statement "that customer's dog that urinated" as hearsay.   (Dkt. No. 16 at 1).   In her response, Hill asserts that "a customer that was in line in front of her was leaving with their dog and advised [Hill] that it was that customer's dog that urinated," citing Exhibit 5.   (Dkt. No. 15 at 5).   Exhibit 5, a PetSmart Incident Report Form, does *not* include the statement "that customer's dog that urinated."   (Dkt. No. 15-6).   Instead, the Incident Report Form completed by Johnson recounts Hill's explanation of the incident.   (*Id.* at 1).   Johnson wrote in full: "Customer dropped leash[,] chased after dog[,] slipped in puddle at register 1.   Fell and hip hurts.   The customer in front of her who was leaving saw her fall[.]   Their dog was the one who left the puddle.   Ambulance took her to DeTar Hospital."   (*Id.*).   Johnson continues on in the Incident Report Form to recount PetSmart customer Kirby Brandt's explanation of the incident.[3]   Johnson wrote: "White dog in front of Mrs. Hill peed.   Mrs. Hill stepped to catch her dog and slipped.   It was a 'pee, step, slip.'"   (*Id.* at 2).

The Court's review of PetSmart's argument and cited materials reveals that there is not a "statement describing or explaining an event or condition" with the words "that

---

[3]   While the Incident Witness Report names the witness as "Kirk Braholt," (Dkt. No. 15-6 at 2), the Parties agree that the name of the witness is Kirby Brandt.   (Dkt. No. 11 at 3); (Dkt. No. 15 at 13).

customer's dog that urinated." *See* Fed. R. Evid. 803(1). Rather, the statement "that customer's dog that urinated" is from Hill's *response* to the Motion for Summary Judgment. *Compare* (Dkt. No. 15 at 5) *with* (Dkt. No. 16 at 1). While the Court examines the Parties' characterizations of the evidence in the briefs, the Court also reviews the underlying evidence itself for the purpose of summary judgment. Fed. R. Civ. P. 56(c)(1); *Thompson v. Zurich Am. Ins. Co.*, No. A-09-CA-493-SS, 2010 WL 3784204, at *7 (W.D. Tex. Sept. 21, 2010) ("[The plaintiff] certainly characterizes the evidence as suggestive that the report was not objective, but the evidence itself does not support [the plaintiff's] characterization."). And the underlying evidence does not include the phrase to which PetSmart objects. The Court overrules the objection.

To the extent that PetSmart argues that Johnson's written statement is hearsay, the Court overrules the objection. Again, Johnson's Incident Report Form describes *Hill's* explanation of the incident to *Johnson*. Hill apparently told Johnson that there was another customer in front of Hill, and it was *that* customer's dog who left the puddle. (Dkt. No. 15-6 at 1). At the summary judgment stage, evidence "need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC*, 835 F.3d at 534 (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). The Incident Witness Report includes evidence that is capable of being presented in a form that would be admissible in evidence. For example, Hill could testify based on her personal knowledge that it was another customer's dog who left the puddle. *See* Fed. R. Evid. 602. Moreover, the Incident Report Form that PetSmart points to merely states in relevant part that "[t]he customer in front of [Hill] who was leaving saw her fall[.] Their dog was the

one who left the puddle." (Dkt. No. 15-6 at 1). Put differently, the Incident Report Form does *not* state that the customer in front of Hill *told Hill* that it was the customer's dog that urinated. Thus, PetSmart has not shown that Hill's "material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2722 (4th ed.) ("Only that portion of a deposition that would be admissible in evidence at trial may be introduced on the motion[.]"). For this alternative reason, the Court overrules PetSmart's objection.

## IV.    DISCUSSION

Now to the merits. Hill raises a single claim for premises liability under Texas law.[4] (Dkt. No. 1-2 at ¶¶ 13–19). "In a premises liability action, the duty owed by a premises owner depends on the plaintiff's status." *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010). One kind of status is an invitee. "An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both." *Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021) (citation omitted). Here, both Parties agree that Hill is an invitee. (Dkt. No. 11 at 7–8); (Dkt. No. 15 at 9). Thus, PetSmart was obligated "to use reasonable care to protect" Hill "from any unreasonably dangerous condition in its store of which it had actual or constructive knowledge." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006).

---

[4]    In this diversity case, the Court applies the substantive law of Texas. *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 308 (5th Cir. 2021) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)).

To prevail on a premises liability claim, an injured invitee must establish four elements:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.

*Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014) (per curiam); *accord Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007).  As these elements indicate, premises liability does not amount to strict liability.  *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002).

PetSmart raises a single argument in favor of summary judgment: Hill has not established an essential element of premises liability: actual or constructive knowledge. (Dkt. No. 11 at 7–13).  In other words, PetSmart only argues that Hill fails to present a genuine issue of material fact as to the first premises-liability element.   Hill agrees that PetSmart only challenges the first element.[5]  (Dkt. No. 15 at 9).

Under Texas law, a slip-and-fall plaintiff can satisfy the knowledge element by showing "that (1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to

---

[5]    This is not to say that PetSmart concedes the other elements.  Rather, in its Motion for Summary Judgment, PetSmart only argues that Hill fails to present a genuine issue of material fact as to one of the elements.

discover it." *Reece*, 81 S.W.3d at 814; *accord Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 15–16 (Tex. 2014).  The Parties agree that PetSmart did not place the substance on the floor.  (Dkt. No. 11 at 8); (Dkt. No. 15 at 11).  Thus, there must be actual or constructive knowledge in order to present a genuine issue of material fact.

Hill does not separate out what facts support actual knowledge and what facts support constructive knowledge.  Instead, she collectively points to four pieces of evidence in support of *both* theories: (1) Johnson's statements to Hill and Hill's husband; (2) Hill's description of the incident coupled with the store receipt records; (3) the proximity of the substance to a PetSmart employee; and (4) PetSmart customer Kirby Brandt's changed recollection.  (Dkt. No. 15 at 11–15).  The Court details each in turn.

First, Hill points to Johnson's statements.  (Dkt. No. 15 at 11–12).  After Hill fell, the woman who provided Hill with a form—presumably Johnson—told Hill, "I'm sorry, ma'am.  We did not have time to clean this up."  (Dkt. No. 15-2 at 25).  And while Hill was in the ambulance, Hill's husband spoke over the phone with Johnson.  (Dkt. No. 15-5 at 18); (Dkt. No. 15-8).  Johnson apologized to Hill's husband and told him that the substance on which she slipped should have already been cleaned up, but PetSmart was short staffed.  (Dkt. No. 15-8).

Second, Hill points to her own description of the incident and the store receipt records.  (Dkt. No. 15 at 12–13).  Before Hill fell and while she was standing in line at Register 1 to check out, Hill saw a customer with a dog standing in front of her.  (Dkt. No. 15-2 at 12–13).  That customer was "three to four people ahead of" Hill at Register 1.  (*Id.* at 13).  Hill then moved over to the line at Register 2 before later moving back to

Register 1.  (*Id.* at 13–14).  When she moved back to Register 1, there was no longer a customer with a dog in that line.  (*Id.* at 14).  Receipt records from Register 1 show that, at 12:21 pm, a customer purchased a "pupbath"—apparently the label PetSmart uses to describe one of its dog-grooming services.  (Dkt. No. 15-13).  Approximately nine minutes later, around 12:30 pm, Hill fell.  (Dkt. No. 15-2 at 6); (Dkt. No. 15-6).  Johnson's written Incident Report Form details Hill's explanation of the incident: "The customer in front of her who was leaving saw her fall[.]  Their dog was the one who left the puddle."  (Dkt. No. 15-6 at 1).

Third, Hill points to the proximity of the urine to a PetSmart cashier.  (Dkt. No. 15 at 13).  There are two pictures: a yellow "CAUTION WET FLOOR" sign next to a register, (Dkt. No. 15-11), and what appears to be urine spans the length of approximately three tiles.  (Dkt. No. 15-12).

Finally, Hill takes issue with PetSmart customer Kirby Brandt's recollection.  (Dkt. No. 15 at 13–15).  Brandt was behind Hill in line on the day of the incident.  (Dkt. No. 15-7 at 7, 11).  Johnson's Incident Witness Form recounts Brandt's explanation of the incident: "*White* dog in front of Mrs. Hill peed.  Mrs. Hill stepped to catch her dog and slipped.  It was a 'pee, step, slip.'"  (Dkt. No. 15-6 at 2) (emphasis added).  Notably, the date of the report is January 15, 2018—the date of Hill's slip and fall.  *See* (*Id.*).  Also notable is that Hill's dog was black.  (Dkt. No. 15-2 at 5); (Dkt. No. 15-4); (Dkt. No. 15-8).  Less than five months after the accident, Brandt executed an affidavit.  He explains:

> I was standing in line at one of the checkout registers behind a woman who had a smaller-size dog on a leash (and the woman was holding the leash).  The woman was facing away

13

> from her dog, when I saw the woman's dog start urinating on
> the floor of the PetSmart store.  The woman turned around
> and stepped in her own dog's urine, took a couple of steps
> and the woman slipped and fell down.  I later learned that this
> woman's name was Earleen Hill.

(Dkt. No. 11-3 at 2).  Brandt's affidavit does not reference the color of Hill's dog.  *See* (*Id.*).

But Brandt's deposition describes Hill's dog as "grayish white."  (Dkt. No. 11-2 at 4).

### A.   WHETHER PETSMART HAD ACTUAL KNOWLEDGE

First, Hill argues that PetSmart had actual knowledge of the substance that she

slipped on.  PetSmart assumes that there is not actual knowledge by arguing that the only

evidence regarding the urine is Brandt's testimony that Hill stepped in her *own* dog's

urine.  (Dkt. No. 11 at 8).  Hill, however, has a different view.  She argues that PetSmart

had actual knowledge of the urine or, in the alternative, constructive knowledge.  (Dkt.

No. 15 at 11–15).  PetSmart replies that Hill "has only offered speculation" regarding

PetSmart's actual knowledge.  (Dkt. No. 16 at 2).  The Court concludes that there is a

genuine issue of material fact as to whether PetSmart had actual knowledge of the

dangerous condition.

"Actual knowledge is knowledge 'of the dangerous condition at the time of the

incident, not merely the possibility that a dangerous condition could develop over time.'"

*Daniels v. Allsup's Convenience Stores, Inc.*, 604 S.W.3d 461, 466 (Tex. App.—Amarillo 2020,

pet. denied) (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008) (per

curiam)).  Thus, it is legally insufficient to merely show that the premises owner knew

that the dangerous condition *could* be on the floor or that there was a risk that the

14

dangerous condition *might* be on the floor.  *Gregg v. Walgreen Co.*, 625 S.W.3d 636, 645 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

While PetSmart argues that Hill has only offered speculation regarding its actual knowledge, the record reflects otherwise.  PetSmart's store leader, Johnson, told Hill after she fell, "I'm sorry, ma'am.  We did not have time to clean this up."  (Dkt. No. 15-2 at 25). One plausible interpretation of Johnson's statement is that Johnson knew that at least one employee was aware of the urine but did not have time to clean it up.  PetSmart disagrees, pointing to Johnson's deposition testimony.  (Dkt. No. 16 at 2).[6]  In the deposition, Johnson states that she was notified of Hill's slip and fall when she was in the lunchroom on her lunch break.  (Dkt. No. 15-5 at 8–9, 21).  While on her lunch break, she was told by a PetSmart cashier that a customer fell at the front of the store.  (*Id.* at 9).  It was then that Johnson "went to the front to address her."  (*Id.*).  In Johnson's deposition, she also stated that she did not know that there was urine on the floor before Hill fell.  (Dkt. No. 11-4 at 3).  Neither, according to Johnson, did her colleagues.  (*Id.* at 3–4).

Even if this evidence casts doubt on whether PetSmart had actual knowledge, Hill also points to additional evidence to support her theory: Johnson later told Hill's husband that the substance should have been cleaned up but that the store was short staffed.  (Dkt. No. 15-8).  One plausible interpretation of this statement is that at least one employee *knew* about the urine but did not clean it up *because* there were not enough employees to step away from their ongoing responsibilities.  If so, Johnson's two statements could

---

[6]    PetSmart does not cite to the record here.

collectively support a finding that PetSmart had "knowledge of the dangerous condition at the time of the incident." *See Daniels*, 604 S.W.3d at 466 (internal quotations omitted). The two statements, read together, are more than speculation that PetSmart knew that the urine *could* be on the floor or that there was a risk that the urine *might* be on the floor. *See Gregg*, 625 S.W.3d at 645. Moreover, it would be improper for the Court to weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

PetSmart makes a final attempt to dispel uncertainty about whether it had actual knowledge: Johnson's statements are legally insufficient because they support an equally plausible inference that it did *not* have actual knowledge. (Dkt. No. 16 at 2–4). PetSmart cites two cases in support. (*Id.* at 3–4). Hill distinguishes the cases. (Dkt. No. 21 at 4–6). The Court agrees with Hill.

The first case PetSmart cites is *Banks v. Wal-Mart*. *Banks* is distinguishable because the plaintiff pursued a constructive knowledge theory—not actual knowledge. No. 4:15-CV-2259, 2016 WL 3773395, at *3 (S.D. Tex. July 8, 2016). The second case is *Wilson v. CBL/Parkdale Mall GP*. In *Wilson*, the Beaumont Court of Appeals affirmed the trial court's decision to grant the defendant's no evidence motion on a premises-liability claim. No. 09-12-00566-CV, 2013 WL 1932834, at *1 (Tex. App.—Beaumont May 9, 2013, no pet.). The Beaumont Court of Appeals agreed that the defendant did not have actual knowledge because there was no evidence that the defendant received reports of prior injuries or potential danger. *Id.* at *3. True, for the purpose of actual knowledge, Texas "courts *generally* consider whether the owner had received reports of prior injuries or reports of

16

the potential danger presented by the condition." *Duncan v. First Tex. Homes*, 464 S.W.3d 8, 16–17 (Tex. App.—Fort Worth 2015, pet. denied) (emphasis added).  But that is not the *only* way to show actual knowledge.  *See Daniels*, 604 S.W.3d at 466.  Thus, both cases cited by PetSmart do not warrant summary judgment in its favor as to actual knowledge.

In sum, the Court is not convinced that there is no genuine dispute of material fact as to whether PetSmart had actual knowledge.  After viewing the evidence in the light most favorable to Hill, the Court concludes that Hill provides more than "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations omitted). Thus, the Court denies the Motion for Summary Judgment on this basis.[7]

### B.   WHETHER PETSMART HAD CONSTRUCTIVE KNOWLEDGE

Next, the Court considers whether PetSmart had constructive knowledge of the substance.  PetSmart argues that it is entitled to judgment as a matter of law because the only competent evidence regarding the substance is Brandt's testimony that Hill stepped in her *own* dog's urine shortly after Hill's dog urinated.  (Dkt. No. 11 at 8).  By necessity, PetSmart reasons, it did not have constructive knowledge because there is no evidence that the urine "existed for some length of time."  (*Id.* at 8–9).  PetSmart also argues that Johnson's statement—"I'm sorry, ma'am.  We did not have time to clean this up."—does not support the inference that is was more likely than not that the urine had been there

---

[7]   Even if there is a not a genuine issue of material as to actual knowledge, the Court concludes that there is a genuine issue of material fact as to constructive knowledge.  The result is the same: the Court denies the Motion for Summary Judgment.

for some length of time.[8]  (*Id.* at 12).  In response, Hill cites the same four pieces of

evidence for constructive knowledge that she did for actual knowledge.  (Dkt. No. 15 at

11–15).

      "Constructive knowledge is a substitute in the law for actual knowledge."  *CMH*

*Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000).  To show constructive knowledge on

behalf of a premises owner, a plaintiff must provide evidence that the "dangerous

condition existed for some length of time" in order to charge the premises owner with

constructive knowledge.[9]  *Reece*, 81 S.W.3d at 815.  A plaintiff does not carry her burden

on constructive knowledge by merely providing evidence that it was more likely than

not that the dangerous condition *could possibly* have been there long enough to charge a

defendant with constructive knowledge.  *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934,

938 (Tex. 1998).  Instead, "the evidence must establish that it is more likely than not that

the dangerous condition *existed* long enough to give the proprietor a reasonable

opportunity to discover the condition."  *Id.* at 936 (emphasis added).  "What constitutes

---

[8]    PetSmart implies that it will object to Johnson's statement.  (Dkt. No. 11 at 12) ("Even if admitted . . . this simply does not . . . .").  But PetSmart does not raise an objection.  Instead, PetSmart merely *anticipates* that Hill will argue that the statement was an opposing party statement under Rule 801(d)(2).  (*Id.* at 6–7).  This is not a "specific ground" upon which the Court can exclude the evidence.  *See* Fed. R. Evid. 103(a).

[9]    As the Supreme Court of Texas explained, this "rule emerged from [its] reluctance to impose liability on a storekeeper for the carelessness of another over whom it had no control or for the fortuitous act of a single customer that could instantly create a dangerous condition."  *Reece*, 81 S.W.3d at 816 (internal quotations omitted).  This is consistent with the conclusion in *Reece*, where the Supreme Court of Texas stated, as a matter of law, that "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition."  *Id.*  Why?  To hold otherwise would expose premises owners to "strict liability for any dangerous condition on their premises"—a result the Supreme Court of Texas has "clearly rejected."  *Id.*

a reasonable time for a premises owner to discover a dangerous condition will, of course, vary depending upon the facts and circumstances presented." *Reece*, 81 S.W.3d at 816. At least two considerations are relevant for determining what constitutes a reasonable time: the proximity of the dangerous condition to an employee *and* whether the dangerous condition is conspicuous. *Id.* But an employee's proximity to the dangerous condition, alone, is legally insufficient to charge a premises owner with constructive knowledge. *Id.* at 813, 816.

Hill points to evidence that it was another customer's dog who urinated on PetSmart's floor. Specifically, Hill saw a customer with a dog standing in front of her while she was waiting in line at Register 1. (Dkt. No. 15-2 at 12–13). By the time Hill moved to Register 2 and then back to Register 1, that dog was no longer there. (*Id.* at 13–14). Hill told Johnson it was *that* dog that urinated—not Hill's. (Dkt. No. 15-6 at 1). Hill supports this theory with other evidence. Receipt records show that, at 12:21 pm, a customer purchased the "pupbath." (Dkt. No. 15-13). This implies that the dog Hill claims was in line at Register 1 could have been the one who received the pupbath. And this implication is consistent with Johnson's explanation of PetSmart's grooming system, where a customer first goes to the groomer and then brings a piece of paper to the cashier to pay for the dog-grooming service that the customer received. (Dkt. No. 15-5 at 12). Approximately nine minutes after the customer purchased a pupbath, at around 12:30 pm, Hill fell. (Dkt. No. 15-2 at 6); (Dkt. No. 15-6). Therefore, Hill provides evidence about the length of time between the dangerous condition—here, dog urine—and her slip and fall. *See Reece*, 81 S.W.3d at 815.

Hill also provides other evidence relevant to whether the length of time was sufficient under the circumstances to constitute constructive knowledge. For example, as to proximity, she presents a picture of a yellow "CAUTION WET FLOOR" sign next to a register. (Dkt. No. 15-11); *see Reece*, 81 S.W.3d at 816. And as to the conspicuousness of the dangerous substance, Hill provides a photograph of a yellow liquid that spans the length of approximately three tiles. (Dkt. No. 15-12); *see Reece*, 81 S.W.3d at 816.

PetSmart makes much of a statement by one of its customers: Brandt. Brandt was behind Hill in line. (Dkt. No. 15-7 at 7, 11). The Incident Witness Form recounts Brandt's explanation of the incident: "*White* dog in front of Mrs. Hill peed." (Dkt. No. 15-6 at 2) (emphasis added). Hill, however, introduces evidence that her dog is black—not white. (Dkt. No. 15-2 at 5); (Dkt. No. 15-4); (Dkt. No. 15-8). Brandt's affidavit, executed less than five months after the accident, does not reference the color of Hill's dog. (Dkt. No. 11-3 at 2). And in Brandt's deposition, he describes Hill's dog as "grayish white." (Dkt. No. 11-2 at 4). He also expands on his version of events: "I saw her dog pee, and I saw her step in it. Period." (*Id.* at 8). In response to a question about how much time passed before she fell, Brandt responded, "Seconds." (*Id.*).

The Court will not resolve the apparent discrepancy between Brandt's statement in the Incident Witness Form that the dog was white and Hill's evidence that her dog was black. Nor will the Court take up Hill's invitation to examine other discrepancies between Brandt's recollection and the evidence she provides. *See* (Dkt. No. 15 at 14–15). It is not the role of a federal court to weigh the evidence or make credibility determinations when evaluating a motion for summary judgment. *Reeves*, 530 U.S. at

20

150, 120 S.Ct. at 2110.   Regardless, Hill has presented enough evidence to survive summary judgment.

To be sure, the Supreme Court of Texas has often found evidence in premises-liability cases wanting.   Consider *Taylor*, where the Supreme Court concluded that the defendant did not have constructive knowledge because there was no evidence that the dangerous condition existed long enough.   222 S.W.3d at 409.   Or consider *Reece*, where the Supreme Court also concluded that the defendant did not have constructive knowledge because there was no direct or circumstantial evidence about how the dangerous condition came to be, how long the dangerous condition existed, and whether the dangerous condition was conspicuous.   81 S.W.3d at 816–17.   But unlike *Taylor* and *Reece*, Hill presents evidence as to how long the dangerous condition existed, how it came to be, and how conspicuous it was.[10]   In this way, Hill's case is similar to *Moreno v. Wal-Mart*, where the court denied a motion for summary judgment as to constructive knowledge because the plaintiff presented evidence about the length of time, the proximity of the employee, and how conspicuous the dangerous condition was.   506 F. Supp. 3d 503, 508–09 (S.D. Tex. 2020).   As such, the Court must deny the Motion for Summary Judgment.

---

[10]   The two cases PetSmart cites in its Reply, (Dkt. No. 16), are also distinguishable for similar reasons.   In *Banks*, Judge Lake granted the defendant's motion for summary judgment on constructive knowledge because there was no evidence (1) that the dangerous condition was present when an employee inspected the area; (2) regarding how long the dangerous condition was there; and (3) regarding how the dangerous condition came into existence.   2016 WL 3773395, at *7.   In *Wilson*, the Beaumont Court of Appeals affirmed the trial court's decision to grant the defendant's no-evidence motion on constructive knowledge because, among other reasons, there was no evidence regarding how long the dangerous condition existed.   2013 WL 1932834, at *3.

**V.      CONCLUSION**

In this whodunit, a jury—not this Court—must resolve whether PetSmart had actual or constructive knowledge for the purpose of Hill's premises-liability claim. Accordingly, the Court **DENIES** the Motion for Summary Judgment.  (Dkt. No. 11).

It is SO ORDERED.

Signed on March 30, 2022.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**