United States District Court
Southern District of Texas
**ENTERED**
March 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| EARLEEN HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:20-CV-00004 |
| | § | |
| PETSMART, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On November 2, 2022, a jury reached a verdict in this slip-and-fall case. (*See* Dkt. No. 50). In short, the jury awarded Plaintiff Earleen Hill $250,050 for her injuries, which was then reduced by 50% for each party's negligence. Defendant PetSmart, Inc. ("PetSmart") now moves for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. (Dkt. No. 52 at 1). PetSmart asks this Court to vacate the jury's verdict and enter a take-nothing judgment. The Court declines PetSmart's invitation.

**I.      BACKGROUND**

On January 15, 2018, Hill dropped her dog off for a grooming appointment at PetSmart in Victoria, Texas. (Dkt. No. 55 at 1–2). Around noon, PetSmart called Hill to inform her that her dog had been groomed and was ready to be picked up. (*Id.* at 2). After receiving this call, Hill made her way to the store. (*Id.*). Upon arrival, Hill entered the PetSmart and noticed a white dog at register one. (*Id.*). Hill proceeded to the back of the PetSmart, which is where the grooming section is located. (*Id.*). After picking up her dog, Hill decided to shop around the store. (*Id.*). After perusing around the store, Hill

and her dog made their way to the registers at the entrance in order to pay for her dog's grooming services. (*Id.*).

Hill first stood in line behind multiple people at register one. (*Id.*). While she waited, a cashier was checking out a customer at the front of the line with a different dog than the white dog that Hill noticed earlier upon entering the store. (*Id.*). To save time, Hill moved to register two, which had a shorter line. (*Id.*). Hill arrived at register two, but she noticed that the line for register two was moving significantly slower than the line for register one. (*Id.*). As a result, Hill made her way back to register one. (*Id.*).

Upon her return to register one, Hill noticed that there were no longer any dogs in the line of people waiting to check out. (*Id.*). While waiting, Hill accidentally dropped her dog's leash and a bit of chaos ensued. (*Id.* at 3). Hill's dog ran towards the exit, and Hill ran after her dog in order to re-leash him. (*Id.*). While in pursuit, Hill slipped near register one in dog urine and sustained injuries. (*Id.*). Hill slipped at 12:34 p.m., approximately 34 minutes after receiving the initial call that her dog was ready to be picked up. (*Id.*).

Hill filed suit in state court against PetSmart. (Dkt. No. 1-2). Hill's sole claim was premises liability, and Hill sought monetary damages for injuries sustained after slipping and falling in the dog urine near register one in PetSmart's store. (*Id.* at 3–4). About two weeks after Hill filed her complaint in state court, PetSmart removed the case to this Court. (Dkt. No. 1).

This case proceeded to trial by jury. At trial, both parties put on evidence, including testimony and exhibits. After deliberation, the jury returned a verdict in favor

2

of Hill totaling $250,050. (*Id.* at 3–5). But the jury reduced Hill's recovery by 50% due to her own negligence. (*Id.* at 2). PetSmart now challenges the jury's verdict. (*See* Dkt. No. 52).

Pending before the Court is PetSmart's Motion for Judgment as a Matter of Law, (Dkt. No. 52) and Hill's Response, (Dkt. No. 55). After reviewing the Motion, Response, and the applicable law, the Court **DENIES** PetSmart's Motion, (Dkt. No. 52).

## II. STANDARD OF REVIEW

"A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (cleaned up). "[T]he legal standard is whether 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 378–79 (5th Cir. 2015) (quoting Fed. R. Civ. P. 50(a)(1)). In other words, "[a] post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Thomas v. Hughes*, 27 F.4th 995, 1008 (5th Cir. 2022) (quoting *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 299 (5th Cir. 2021)).

## III. DISCUSSION

In finding PetSmart negligent, the jury answered yes to the following question:

> Did the negligence, if any, of those named below proximately cause the injury in question?

Answer "Yes" or "No" for each of the following:

    a.    PetSmart    *Yes*

    b.    Earleen Hill    *Yes*

(Dkt. No. 50 at 1).

The jury was instructed that with respect to the condition of the premises, PetSmart was negligent if:

1) the condition posed an unreasonable risk of harm, and

2) PetSmart knew or reasonably should have known of the danger, and

3) PetSmart failed to exercise ordinary care to protect Earleen Hill from the danger, by both failing to adequately warn Earleen Hill of the condition and failing to make that condition reasonably safe.

(*Id.*).

PetSmart challenges the jury's determination. (*See* Dkt. No. 52). Specifically, PetSmart argues that no reasonable jury could conclude that PetSmart was negligent because "there was no competent evidence" put on at trial establishing that PetSmart knew, or should have known, about the presence of dog urine near register one prior to Hill's slip. (*Id.* at 1). Hill responds that she established that PetSmart had constructive notice, (Dkt. No. 55 at 7–8), and put on evidence from Hill's husband, testimony from a former PetSmart employee, PetSmart's Incident Report, and register one's transaction history. (*Id.* at 11–13). Hill argues that this evidence is more than enough to satisfy Rule 50's stringent standard, which warrants dismissal only "when the facts and inferences

4

point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." (*Id.* at 6) (quoting *Thomas*, 27 F.4th at 1008). The Court agrees.

Under Texas law, for an invitee to prevail on a premises liability claim, the invitee must establish that:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.

*Henkel v. Norman*, 441 S.W.3d 249, 251–52, (Tex. 2014) (per curiam) (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000)). Again, PetSmart challenges the jury's determination that PetSmart had actual or constructive knowledge of the dog urine prior to Hill's slip.

In Texas, a slip-and-fall plaintiff satisfies the constructive-knowledge element of a premises liability claim if she establishes that "(1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

In this case, Hill produced sufficient evidence at trial so that a reasonable jury could have found that PetSmart had either actual knowledge or constructive notice of the dog urine prior to Hill slipping in it. (*See* Dkt. No. 42); (*See* Dkt. No. 45); (*See* Dkt. No. 51). For example, Hill's husband testified that PetSmart's manager told him that the dog urine

5

*should have* been cleaned up before Hill's fall, but, because PetSmart was short-staffed that day, the puddle of dog urine was not cleaned up prior to her fall. (*See* Dkt. No. 55 at 11). Although this statement is subject to multiple interpretations, a jury could reasonably conclude from this statement by PetSmart's manager that PetSmart had actual notice of the dog urine prior to Hill's slip and fall.

In addition to a reasonable inference that PetSmart had actual knowledge, Hill put on evidence at trial of the possibility that the dog urine remained on the floor at least 13 minutes, and this length of time could establish PetSmart's constructive knowledge of the urine puddle. (*See id.* at 11–13). More specifically, Hill testified that, when she first got in line at register one for checkout, there was a customer and their dog checking out at register one. PetSmart's transaction history puts this checkout at 12:21 p.m. (*See id.* at 5); (*See* Dkt. No. 51 at 5–12) (Plaintiff's Exhibit No. 4). Hill's incident occurred at 12:34 p.m. Assuming the dog that left the urine puddle was the one checked out at 12:21 p.m., a puddle of dog urine was left on the tiles of PetSmart for 13 minutes. A reasonable jury could conclude that this 13-minute time period establishes that PetSmart had constructive notice of the urine prior to Hill's fall.

PetSmart argues that, even if dog urine was present for 13 minutes before Hill's fall, 13 minutes cannot establish constructive notice as a matter of law. (*See* Dkt. No. 52 at 4–6). In making its argument, PetSmart relies on *Leeuw v. Kroger Tex., L.P.*, No. 3:19-CV-01771, 2021 WL 4295405 (N.D. Tex. Sept. 21, 2021). At its narrowest, *Leeuw* held that an *inconspicuous* liquid on the floor for ten minutes could not establish the premises owner's constructive knowledge. *Leeuw*, 2021 WL 4295405, at *11. In *Leeuw*, the liquid

6

on the floor was clear (water) and measured "no more than one half or one inch wide." *Id.* In short, the premises owner in *Leeuw* was not on notice of the hazard because "[t]he condition did not consist of a large puddle of water that would have been obvious to passers-by or persons working nearby." *Id.*

This case is distinguishable. During trial, Hill offered a picture of the puddle of dog urine provided by PetSmart during discovery. (*See* Dkt. No. 51 at 2) (*See* Dkt. No. 55 at 8); (*See* Dkt. No. 51 at 2). Unlike *Leeuw*, which featured a small "stream" that was "no more than one half or one inch wide" of a clear liquid, the puddle of dog urine pictured in this case was significantly larger and yellow in color. *See Leeuw*, 2021 WL 4295405 at *11. The liquid in this case was sufficiently noticeable, and following a theory of the case presented at trial, lasted on the ground for at least 13 minutes. A reasonable jury could conclude that PetSmart had constructive notice of this puddle of dog urine prior to Hill slipping.

But this 13-minute theory was just one theory Hill presented at trial in arguing that PetSmart had constructive notice of the dog urine prior to her slipping on it. Recall in the background section of this opinion, *see supra*, that there was another theory in this case. Notably, Hill received a call from PetSmart at 12:00 p.m. that her dog was ready to be picked up, and she arrived at the store shortly after receiving this phone call. Upon arrival, Hill noticed that there was a white dog at register one, which was a different dog than the dog who was being checked out at register one when Hill first stood in line at register one. Evidence was put on at trial that the white dog urinated on PetSmart's floor

before the other dog at 12:21, leaving urine on the ground even longer than 13 minutes before Hill slipped.

So, which one of these theories is correct? Did PetSmart have actual knowledge of the dog urine based upon its manager's statement to Hill's husband? Did PetSmart have constructive notice of the puddle of dog urine based upon the puddle existing for 13 minutes before Hill's fall (assuming the it was not the white dog but, instead, the dog identified when Hill first got in line)? Or did PetSmart have constructive knowledge based upon a gap in time larger than 13 minutes (assuming the culprit was the white dog who was being checked out at register one upon Hills' arrival in PetSmart)?

That is not for the Court to decide. That was the jury's job. The Court's job is to ensure that there is sufficient evidence in the record to support any of these theories. "A motion for judgment as a matter of law should be granted if 'there is *no legally sufficient evidentiary basis* for a reasonable jury to find for a party.'" *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) (emphasis added) (quoting Fed. R. Civ. P. 50(a)). In other words, "if reasonable persons could differ in their interpretation of the evidence, then the motion should be denied." *Id.* (citation omitted). The Court finds that reasonable jurors could differ as to (1) whether PetSmart's manager's statement to Hill's husband could be interpreted as actual notice, or (2) whether PetSmart had constructive notice based on either one of the time-based theories.

Because there is a legally sufficient evidentiary basis for the jury's findings, the Court **DENIES** PetSmart's Motion.

8

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** PetSmart, Inc.'s Motion for Judgment as a Matter of Law Pursuant to Rule 50, (Dkt. No. 52).

It is SO ORDERED.

Signed on March 7, 2023.

                                           _____
                                           **DREW B. TIPTON**
                                           **UNITED STATES DISTRICT JUDGE**